The opinion of the Court was afterwards drawn up by
Morton J.
This case comes before us on a motion in arrest of judgment. The verdict of the jury establishes every material allegation in the plaintiff’s declaration. And every fact substantially set forth is to be taken to be true. The question for our decision is, whether these facts are sufficient to entitle the plaintiff to judgment. Although the verdict is general, yet in this case, if either count is good, the verdict may be applied to that count and judgment be rendered upon it. The following are all the material allegations contained in either of the counts — That the plaintiff had a just debt due him from one Thompson — that the latter had property liable to attachment sufficient to pay this debt — that the defendant took a fraudulent conveyance of this property — that Thompson has absconded from the State — that the plaintiff has not been able to arrest him, to attach his .property, or otherwise tc obtain satisfaction of his debt — and that the acts done by the defendant were done with intent to defraud the plaintiff, by preventing him from securing or getting satisfaction of his debt. Some of these are omitted in several of the counts ; but no one contains any other material allegation.
Will these facts support an action ?
Before proceeding to the investigation of the main question, it may be proper to remark, that the declaration contains no averment that Thompson is insolvent, or that he has not, where he now resides, property liable to be taken, sufficient to satisfy the debt, or that any suit has ever been commenced against him, or any attempt made toarre st his body or attach his property; nor is it alleged, except by implication, that he has not in this State real estate or personal property other thaf that transferred to the defendant, liable to attachment.
It ought also to be further remarked, that this is not an action of conspiracy or of case in the nature of conspiracy. It *541 is not founded upon any illegal combination or confederacy. The declaration does not set forth any conspiracy to defraud the plaintiff or to evade or defeat any legal process. No such fact can be presumed to exist; and therefore we have no occasion to determine what effect such an averment would have. It will however be perceived, that some of our reasoning would apply to such an action, as well as the one before us.
This is a special action of the case, depending upon the precise facts set forth in the declaration. It is an action of new impression. It is admitted that no precedent can be found for it. This circumstance of- itself forms a pretty strong objection. It ought however to have less weight in this than any other form of action. In the diversified transactions of civilized life new combinations of circumstances will sometimes arise, which will require, in the application of well settled principles of law, new forms of declarations.
Among the old and wise axioms of the law none are more sound than those upon which the plaintiff attempts to found this action. In law, for every wrong there is a remedy. 3 Bl. Com. 123 ; Ashby v. White, 1 Salk. 21. Whenever the law creates or recognises a private right, it also gives a remedy for a violation of it. 1 Chit. Pl. 83 ; 11 Johns. R. 140. The general principle, that whenever there is fraud or deceit by the one party and injury to the other, or damnum cum injuria, there an action will lie, is very often referred to with approbation, and always recognised as good law. Upton v. Vail, 6 Johns. R. 182 ; Pasley v. Freeman, 3 T. R. 51 ; Eyre v. Dunsford, 1 East, 329.
But these principles, however sound, must be understood with such qualifications and limitations as other principles of law equally sound necessarily impose upon them. It is very clear that there may be many moral wrongs for which there can be no legal remedy. And there may be legal torts in which the damage to individuals may be very great, and yet so remote, contingent or indefinite, as to furnish no good ground of action. 3 T. R. 63.
Without entering further into the explanation of these principles, their extent, qualifications or limitations, we will pro *542 ceed to inquire how far they may be relied upon in support of this action. To render them applicable the plaintiff must show that he has sustained damage from the tortious act of the defendant, for which the established forms of law furnish him no remedy. If he may have redress by any of the forms of actions now known and practised, it would be unwise and unsafe to sanction an untried one, the practical operation oí which cannot be fully foreseen. The Court will adopt a new remedy to prevent the failure of justice, or to enforce the settled principles of law ; but never when justice can be attained by any of the remedies already known to the law. Com. Dig. Action on the case, B 8.
The gist of the injury complained of is the fraudulent purchase by the defendant, of the property of the plaintiff’s debtor. If the sale was fraudulent, it might be avoided by the creditors, and the property was liable to attachment after as well as before the conveyance. The fraud could be established quite as easily in a suit for the chattels themselves, as m the present case. There is no averment that the defendant had concealed the property, removed it out of the commonwealth, or in any other, way so disposed of it that it could not be attached. But even if it were so, and the property could not be come at to be attached specifically, yet it might be attached in the defendant’s hands by the trustee process. In this event the defendant would be compellable to disclose all the circumstances attending the transaction, on oath ; and if he did not answer truly, would be liable to a special action on the case, by St. 1794, c. 65, § 9. It would be difficult to show any good reason why the plaintiff might not obtain legal justice in the one or the other of these modes, as easily and surely as by the present action. Burlingame v. Bell, 16 Mass. R. 320 ; Devoll v. Brownell, 5 Pick. 448.
It was said in argument by the plaintiff’s counsel, that if he resorted to the trustee process, the defendant would be entitled to any equitable set-off which he might have against his principal ; that if he had made advances or paid debts in good faith, he would be allowed to apply them towards satisfaction for the property conveyed to him, and so the plaintiff *543 could not avail himself of the full value of the property. 5 Pick. 32 ; 6 Pick. 474 ; 7 Pick. 166.
And why should it not be so ? If the defendant paid bond fide the value of the property, the plaintiff is not injured. The owner had good right to sell to whom he pleased, and to prefer any other of his creditors to the plaintiff. If the fraudulent conduct of the defendant has done no injury to the plain tiff, he cannot complain. He cannot have the aid of the law to "speculate upon the defendant’s fraud. The law will protect him from damage, but will not enable him to derive advantage, from the fraudulent conduct of the defendant.
This action, if sustained, would establish a precedent which would produce in practice great inconvenience and oftentimes do manifest injustice. If the plaintiff may maintain this action against the defendant, so may every creditor of Thompson. The plaintiff had done nothing to give him priority. Shall the fraudulent purchaser be holden to pay all the debts of the fraudulent vendor ? Justice does not require this. The conveyance might be fraudulent in law, and yet there might be no moral turpitude in the transaction. The property conveyed might be very small and the debts very large. Shall the value of the property transferred be apportioned among all die creditors ? By what rules shall the apportionment be made ? Shall the creditor who first sues be entitled to the whole, if his debt be large enough to require the whole for its satisfaction ? If one creditor should attach the nroperty specifically another should summon the fraudulent vendee as trustee of the vendor, and a third should commence an action like this, which would have the preference ? Can the same party resort to more than one of these remedies at the same time ? And would the judgment in the one be a bar to the other ? Many cases might occur, in which it would be extremely difficult to adopt any rule of damages which would do justice to all the parties interested.
But besides these practical inconveniences, which are of themselves insurmountable, there is another objection fatal to the present action. The injury complained of, is too remote, indefinite and contingent. To maintain an action for the deceit or fraud of another, it is indispensable that the plaintiff should *544 show not only that he has sustained damage and that the defendant has committed a tort, but that the damage is the clear and necessary consequence of the tort, and that it can be clearly defined and ascertained. What damage has the plaintiff sustained by the transfer of his debtor’s property ? He has lost no lien, for he had none. No attachment has been defeated, for none had been made. He has not lost the custody of his debtor’s body, for he had not arrested him. He has not been prevented from attaching the property or arresting the body of his debtor, for he never had procured any writ of attachment against him. He has lost no claim upon or interest id the property, for he never had acquired either. The most that can be said is, that he intended to' attach the property and the wrongful act of the defendant has prevented him from executing this intention. Is this an injury for which an action will lie ? How can the secret intentions of the party be proved ? It may be he would have changed this intention. It may be the debtor would have made a bona fide sale of the property to some other person, or that another creditor would have attached it, or that the debtor would have died insolvent, before the plaintiff would have executed his intention. It is therefore entirely uncertain whether the plaintiff would have secured or obtained payment of his debt, if the defendant never had interfered with the debtor or his property. Besides, his debt remains as valid as it ever was. He may yet obtain satisfaction from property of his debtor, or his debtor may return and pay him. On the whole it does not appear that the tort of the defendant caused any damage to the plaintiff. But even if so, yet it is too remote, indefinite and contingent, to be the ground of an action.
Among the many cases cited by the plaintiff’s counsel, those of Adams et al. v. Paige et al., 7 Pick. 542, Yates v. Joyce, 11 Johns. R. 136, and Smith v. Tonstall, Carthew, 3, bear the greatest resemblance to the case at bar. But an examination of these cases will not only show that there is an obvious and broad distinction between them and the one under consideration," but that the principles adopted in all of them supnort the ground now taken by the Court.
*545 In Adams et al. v. Paige et al. the plaintiffs had made an attachment of the property of their debtor; the two defendants, one of whom was the debtor, had caused a previous attachment to be made of the same property on a fictitious debt which they had created for the purpose of preventing attachments on bond fide debts. The suit upon which the fraudulent attachment was made was pursued to judgment, the property attached was sold on execution and the proceeds of the sale remained in the hands of the fraudulent judgment debtor. Now by these collusive acts the jdaintiffs’ attachment was defeated and the price of the property, which but for the fraudulent acts of the defendants would have been applied to the satisfaction of the plaintiffs’ execution, was holden by one of the defendants. Here the loss of the debt was the consequence of the loss of the lien, and the loss of the lien was the clear and certain consequence of the fraudulent conduct of the defendants. The injury was direct and certain, and the damages easily shown and defined. The justice of the plaintiffs’ claim was very obvious, and their recovery founded on the soundest principles of law.
Besides, if we were looking for distinctions between Adams et al. v. Paige et al. and the case at bar, it would be sufficient to state that the former was an action for a conspiracy between two, to defraud the plaintiffs by means of a fictitious debt and a collusive judgment, in which the unlawful confederacy was the gist of the action.
In Yates v. Joyce, the plaintiff, by means of a judgment against his debtor, had, according to the laws of New York, acquired a lien on certain property, which' was injured and reduced in value by the tortious acts of the defendant, so as to be insufficient to satisfy the plaintiff’s judgment. The plaintiff suffered an injury for which he had no other remedy. The damage was definite and certain, and was the direct and necessary consequence of the defendant’s tort. His right to recover was unquestionable.
The old case of Smith v. Tonstall, Carth. 3, is very similar and rests upon the same principle. The plaintiff having obtained a judgment against one S., the defendant procured S. to confess a judgment to himself when nothing was due to *546 him. This collusive judgment was satisfied by the sale of goods on which the plaintiff, by his prior judgment, had acquired a lien, thus placing in the defendant’s hands the price of goods which were liable for the plaintiff’s judgment.
Oct. term, 1831.
In all these cases the plaintiffs had a clear and valuable interest in or lien on certain property, which was defeated or destroyed by the tortious acts of the defendants. Not so in the case at bar. The plaintiff does not allege that he had any special property or any interest in or claim on any property which was destroyed or injured by any act of the defendant. And we are all of opinion that he has not set forth any such ground of action as can be sustained upon any known principles of law. Vernon v. Keyes, 12 East, 632.[1]

Judgment arrested.

A deposition was taken on the part of Stone, the defendant, to be used in the Court of Common Pleas, on account of the expected absence of the deponent; it was not used however, as the deponent was present and examined at the trial in that court; but at the trial in the Supreme Court he was absent and the deposition was therefore read. The plaintiff now objected that the cost of the deposition ought not to be taxed. But per Curiam. If a deposition is used in any stage of a cause, the precaution of taking it was a wise one, and the costs should be taxed. But where a party takes a deposition for precaution, and makes no use of it in the cause, the deponent being present at the trial or trials, he does not tax it in the bill of costs.

 See Smith v. Blake, 1 Day, 258; Seehorn v. Darwin, I Const. (S. Carolina) R 196.