The petition to which demurrers were sustained is quite lengthy, and we copy appellant's statement of its nature: "The suit is for damages growing out of the conduct of the defendant in issuing checks at its store at Silsbee, Hardin county. The original suit was for the value of $154 in value of defendant's pay checks, and for damages for boycotting plaintiff and breaking up his saloon business, located about three miles from defendant's store. The district court held that there was a misjoinder of actions. The plaintiff then dismissed the claim for the $154 in checks, and amended his petition, claiming only the damages by the destruction of his business. The checks are made of cardboard, 1 1/4 inches in diameter, with these words printed around the outer edge: `Texas Pine Land Association, Silsbee, Texas.' And across the face these words: `Good for $1 in merchandise at the store. Not transferable.' That some of said checks are for smaller amounts than $1. That on the reverse side of checks is the name `Jas. L. Kirby,' written thereon. The defendant opened its store in 1894, and was engaged in cutting and shipping logs to sawmills at Beaumont, and issued said checks in payment of wages to its employes, who then took the same to the store, and purchased such goods as were needed. That the words `Not transferable' are upon each check, yet the employes of the defendant bought country produce of the people, and paid for the same in checks, and that these people, who were not employes of defendant, and *Page 844 
never had been, bought goods of defendant at its store, and paid for same in checks, and said employes bought goods of defendant and paid in checks, and said employes bought goods of defendant [plaintiff] and paid in checks, and he in turn bought goods of plaintiff [defendant], and paid for same in these checks, and traded some of the checks to others who were not employes of defendant, who bought goods of defendant and paid in checks; and that the defendant knew of this trade in its checks, and did not object thereto until the plaintiff had a great many of them, and then refused to take the checks from him in payment of goods, and refused to take checks from persons who had bought or traded for same with plaintiff. And the defendant, for the purpose of injuring plaintiff in his business, at a time after the plaintiff had taken and received the checks of the defendant which he now has, stated to its employes that it (defendant) would discharge each and every one of its employes from its service in case any one of them should buy goods, liquors, etc., or trade in any manner whatever with the plaintiff; and, further, the defendant then and there stated to its clerks and other employes that it would not take up any checks, and receive the same in payment of its goods, wares, and merchandise, from any person whomsoever, when and where said checks had passed through the hands of Jim Robison, the plaintiff. Plaintiff further alleges that he was at this time making a profit of $150 a month in his business; that among his customers were the defendant's employes, and other person who used defendant's checks, and that, by reason of defendant's order to its employes, he could no longer take the checks, except a few, and his customers could not trade with him, etc.; and that he was thereby damaged by loss of trade in the amounts as claimed." The petition further disclosed that plaintiff was engaged in selling goods of the same kind and quality as were sold at defendant's store to some of defendant's employes and other people in the neighborhood; in other words, that they were, to some extent, competitors in trade. There is also an allegation that defendant had, by its agents and employes, and for its own dishonest and corrupt purposes, and for the purpose of destroying the competition in trade of plaintiff in the sale of goods, wares, and merchandise, threatened its employes with discharge if they refused to sign a certain petition for a local option election, or if they voted against the same, — plaintiff being engaged in the sale of liquors, — which election, if it had carried, would have closed up plaintiff's business. This is alleged probably to show the malice of defendant towards plaintiff. The action upon the checks that had been taken by plaintiff in trade was abandoned, and the prayer of the amended petition was for $650 actual and $1,000 punitory damages, for loss of business through the act of defendant in threatening its employes with discharge in case they should trade with plaintiff, and in announcing its determination not to honor any checks that passed through the hands of plaintiff.
The principles stated to Delz v. Winfree, 80 Tex. 400, 16 S.W. 111, apply in this case. See, also, Graham v. Railroad Co. (La.)16 So. 806. According to plaintiff's allegations, competition in trade existed between plaintiff and defendant, and it was legitimate for defendant to appropriate to itself all the customers it could command, even to the extent of driving plaintiff out of business, provided the means used for that purpose did not contravene any law, or violate a definite legal right to protection against competition. He had no superior right to the trade of defendant's employes, or that of other persons. Poll. Torts, 408. The statute in reference to conspiracies against trade does not apply to this case, where there is no combination, and when the acts complained of as affecting competition are the acts of defendant alone. If the defendant could so control its employes as to prevent their dealing with plaintiff, or so control their wages as to divert them from the channels of plaintiff's business in favor of its own, we know of no rule making it actionable. Had the defendant no proper interest of its own to subserve in so doing, but had acted wantonly in causing loss to plaintiff, the rule would be different. The fact that defendant's purpose by its acts was to break plaintiff up in business would not give the cause of action, for that is the natural result of successful competition. Defendant might at any time have stopped the issuing of checks, and plaintiff could not have complained. It had a right, if the employes were satisfied to work on such terms, to pay the latter directly in goods, and he could not complain, or in checks redeemable in goods only by them and certain other persons. It could not be required to treat the checks as money in the hands of other person, which is practically a contention of plaintiff. If they could stop the system altogether without giving a right of action in tort, it would follow that they could place restrictions on the use of checks without incurring such liability. This is not a suit to recover the value of checks taken by appellant, but one in which he seeks to recover in tort for the invasion of a right, when he fails to show the existence of any right. A system whereby such checks would be honored in the hands of any one except plaintiff was calculated to insure trade at defendant's store, and diminish that of its rival; and, as plaintiff has no definite right to the public trade, he has no legal right to complain that defendant absorbed it by the manner of managing its business, and its relation with its employes. The judgment is affirmed.
 *Page 1