CUNNINGHAM ET AL. *v.* EDWARD.

(Decided March 11, 1936.)

*Messrs. Deibel, Price & Elbrecht, Mr. Jos. G. Ehrlich* and *Messrs. Slabaugh, Seiberling, Huber & Guinther,* for plaintiffs in error.

*Mr. Lewis D. Slusser,* for defendant in error.

WASHBURN, J. For the sake of brevity we will consider this case as though Jessie Cunningham, one of the plaintiffs in the Common Pleas Court, was the sole plaintiff therein; in which court it was determined that her petition against James P. M. Edward did not set forth facts sufficient to constitute a cause of action. Said Jessie Cunningham not desiring to plead further, final judgment dismissing her petition at her costs was entered.

For the purpose of considering the question to be decided, the facts alleged in the petition will be stated as briefly as possible. They are that James P. M. Edward was the husband of Catherine Edward, and that if Catherine Edward died intestate, her property would pass to her said husband; that Jessie Cunningham was the sister of Catherine Edward, and that Catherine Edward desired to make a will giving a part of her property to her said sister, Jessie Cunningham, and that Jessie Cunningham and said husband each

knew of said desire of Catherine Edward; that on August 11, 1930, Catherine Edward, who was then confined to her bed with sickness, had in her possession a written instrument which she had signed, bearing date of November 17, 1929, and purporting to be her last will, and providing for a legacy to Jessie Cunningham, but which instrument was not subscribed by any witness; that on said 11th day of August, 1930, Catherine Edward, while of sound mind and memory, exhibited said writing to Jessie Cunningham and asked her to summon two persons to come to her presence to act as witnesses to complete the execution of said instrument; that thereupon her said husband, James P. M. Edward, being aware of her intention to duly execute said instrument as a will, ''then and there threatened, in a menacing manner, to blow out the brains of any one who attempted to take away from him any property belonging to'' Catherine Edward; that said threats were of such a menacing character as to intimidate and threaten Catherine Edward, so that she countermanded her request to Jessie Cunningham to summon said witnesses, and announced that ''she would herself take care of the due execution of said instrument as soon as she had recovered sufficiently from her illness to see to the due execution thereof''; that thereafter Catherine Edward continued, until her death on August 17, 1930, ''to entertain a settled purpose and intent properly to execute said instrument as a will, but was prevented from the due and full execution of the same as her last will solely and only by fright and fear, induced and caused by said wrongful and unlawful duress of'' said husband; and that the assets of the estate of Catherine Edward were in excess of the amount of said proposed legacy to Jessie Cunningham.

The petition asked for a judgment against said hus-

band for the amount of said proposed legacy, with interest.

The controlling question to be determined is as to whether said acts of said husband constituted an invasion of a legal right of Jessie Cunningham, and it does not call for any consideration of the general class of torts wherein is involved the element of a duty owed to the plaintiff by the defendant, and in which negligence in the performance or failure to perform is an important consideration.

To constitute an actionable tort where there is no violation of a legal duty of the defendant, there must be an invasion of a legal, as distinguished from a moral, right of the plaintiff, for it is clear that there are many moral wrongs for which there is no legal remedy.

There are many acts done in the exercise of individual rights which occasion loss to others, which nevertheless afford no subject of legal redress. The line which separates this class of acts from those which form the subjects of legal redress is often shadowy and indistinct. It rests frequently on grounds of public policy, or upon the mere force of authorities, rather than upon any clear or well-defined principle.

The general statement that where there is fraud of one party and injury to another, an action in tort will lie, must be understood with such qualifications and limitations as other principles of law equally sound necessarily impose; unless so understood, such general statement cannot safely be applied as a test by which to determine whether the facts in a given case constitute an actionable wrong.

If no legal right of Jessie Cunningham was invaded, the fact that said husband, in protecting and furthering his own interests and preventing his wife from completing a gift which she desired to make, acted with

malice towards Jessie Cunningham, would not enlarge his responsibility to Jessie Cunningham.

It is conceded that the wife had a perfect right to make a gift to her sister, but in this suit the husband's conduct was not necessarily a wrong against Jessie Cunningham simply because it was wrong as against his wife; as against Jessie Cunningham the husband had at least as much right as she had to desire that Catherine Edward should give her property to him, and as against Jessie Cunningham he had a right to further and protect his own interests, and therefore, as against her, so far as the question of actionable tort is concerned, it is immaterial that he was motivated by malice towards her.

The general statement that intentional injury without justification creates liability does not solve the problem, for that statement presupposes that the injury complained of flows from the violation of a legal right.

In transactions similar to that involved in the instant case it has been repeatedly held that there is no actionable wrong unless there was an invasion of a legal right of the plaintiff; in that connection a legal right is one that the law recognizes as so far legitimate as to make one who interferes with its realization civilly liable.

If I have a right to a legacy under a will of a deceased person, and the will is wrongfully destroyed, my legal right is invaded, and for such injury I may maintain an action in tort against the wrongdoer; but how can I have a legal right to a nonexistent legacy?

Can I have a legal right to a wholly prospective legacy? Can private intentions concerning gifts of property be the foundation of a right which the law recognizes and protects? Is the advantageous position which I occupy with reference to the *probability* of receiving a gift by will in the future, such an inter-

est or right incident to the possession or ownership of property as the law recognizes and protects?

To be sure, I have an interest in a prospective gift —an interest in the sense that a gift is the object of human desire—but is the possibility of realizing such desire regarded as of sufficient social importance to entitle it to protection by imposing liability on those who thwart such desire?

Suppose I desired very much to marry a particular girl and am able to prove that she desired very much to marry me, although we have made no contract to that effect, and suppose further that I am able to prove that but for the wrongful and knowingly untruthful statements (not slanderous, however) made about me to the girl by A., who is not a relative or suitor, we would have been married. In such a situation the probability of my realizing my desire is not recognized as a legal interest which the law will protect by holding that A. is liable in damages for thwarting such desire.

In fact, according to many cases, and probably according to the weight of authority, even if I were able to prove that there was an actual contract to marry, the law does not recognize that I have such a legal right as would permit me to maintain an action in tort for damages against one who has thwarted the consummation of such marriage.

While a child desires and is usually expected to be permitted to share in its parents' estates, the law does not insure this as a right. If its parents see fit to disinherit it, it has no redress by an action in tort, even against one who wrongfully induces such disinheritance, because no legal right of the child has been invaded.

A son, by reason of his relationship to his father, has no legal right in his father's property, and therefore after his father's death the son, as an heir, can-

not maintain an action to set aside transfers of property which it is claimed the father was induced to make by false and fraudulent representations; having no legal interest in the property, he suffered no legal wrong by such transfers.

A creditor who has no lien on the property of his debtor has no legal right or interest therein, and therefore may not maintain an action at law for damages against one who, by conspiracy with said debtor, has fraudulently received a conveyance of said property from said debtor.

Even when a tort action is based on the violation of a duty it is only the omission to discharge, or the negligent discharge of, *legal* duties that comes within the sphere of judicial cognizance; feelings of kindness and sympathy may move one to minister to the needs of the sick and wounded, but the law does not impose such duty upon one who is a stranger to those so afflicted, and who is in no wise the cause of their condition.

A patron of a street railway company incurs no liability to a conductor by reporting to the superintendent of the company such conductor's misconduct, while on duty, toward a passenger, though in making the report he is prompted by ill will and a desire to secure the conductor's discharge from the service of the company, which desire was realized.

The right of A. to continue working for C., there being no contract between them as to duration of employment, is not a legal right the invasion of which gives rise to an action in tort against one who maliciously coerces C. to discharge A. This proposition of law was announced in a decision by the House of Lords as late as 1897, after the case had been argued and reargued, and considered for over a year.

We have been unable to find a case in which, under circumstances substantially similar to the instant case,

any court has permitted a recovery. (The reference
to the subject in *Lewis* v. *Corbin*, 195 Mass., 520, 81
N. E., 248, 122 Am. St. Rep., 261, is dictum; no recovery was allowed.) The cases are rare indeed in which
a right to recover has been urged under similar circumstances.

It must be remembered that the instant case does
not involve an interference with a right to work or
transact business, nor an interference with a contract
relation; neither does it involve an injury to health,
liberty, reputation or property, or any destruction,
suppression or change of a will; all that is claimed is
a wrongful interference with one about to make a will
in favor of plaintiff. Under such circumstances the
party aggrieved must establish not only the wrong,
but his right to the bounty or favor about to be bestowed.

The fact that we can find no precedent for the action
does not prove the absence of such right; but the fact
that the development of the law of torts shows a tendency to recognize as worthy of legal protection interests which previously were not protected renders significant the fact that no appeal for the redress of a
like grievance has found its way into the courts.

There was no relation between Jessie Cunningham
and said husband giving rise to any legal duty owed
by said husband to Jessie Cunningham, and, as has
been said, if plaintiff has any cause of action in tort
against said husband it can arise only out of the invasion of a legal right of Jessie Cunningham by said
husband, and we are of opinion that the facts alleged
in the petition show no such invasion.

Jessie Cunningham had no interest whatever in the
property of her sister, and until such time as a gift of
some or all of such property might be made to her,
she had no right, legal or otherwise, to any of it.
If her sister had executed the will she would have had

a perfect right to revoke it at any time before her death, and the fact, as alleged, that she would not have done so, is not the equivalent of having made a will. By the wrongful act complained of the sister has not been deprived of the present actual enjoyment of some pecuniary advantage. She had no interest in the property of which she says she has been deprived by the fraudulent interference of said husband, beyond a mere naked possibility; an interest which might, indeed, influence her hopes and expectations, but which is altogether too shadowy and evanescent to be dealt with by courts of law.

This is a novel case, as to which we have no exact precedent for guidance, and for that reason it has been determined upon general principles which we think are well established, the wisdom of which we recognize. The question has had due consideration, and the result indicated represents our best judgment.

Some of the many authorities we have investigated are the following: *Allen* v. *Flood,* 14 Times Law Reporter, 125 (House of Lords, 1897) ; *Lancaster* v. *Hamburger,* 70 Ohio St., 156, 71 N. E., 289, 65 L. R. A., 856; *Hutchins* v. *Hutchins,* 7 Hill (N. Y.), 104; *Lamb* v. *Stone,* 28 Mass., 527; *Union Pacific Ry. Co.* v. *Cappier,* 66 Kan., 649, 69 L. R. A., 513; *Randall.* v. *Hazelton,* 94 Mass. (12 Allen), 412; *Hardison* v. *Reel,* 154 N. C., 273, 70 S. E., 463, 34 L. R. A., (N. S.), 1098; *Creek* v. *Laski,* 248 Mich., 425, 227 N. W., 817, 65 A. L. R., 1113; *Heywood* v. *Tillson,* 75 Me., 225, 46 Am. Rep., 373; *Hunt* v. *Simonds,* 19 Mo., 583; *Debnam* v. *Simonson,* 124 Md., 354, 92 A., 782; *Hurwitz* v. *Hurwitz,* 31 N. Y. Supp., 25, 10 Misc. Rep. (N. Y.), 353; *Campbell* v. *Rogers,* 2 Handy, 111, at page 118; *Robison* v. *Texas Pine Land Assn.,* 40 S. W., 843.

*Judgment affirmed.*

FUNK, P. J., and STEVENS, J., concur.