JOURNAL ENTRY and OPINION
Plaintiffs-appellants Marilyn Grayson Smith and her relatives[1]
appeal from the trial court orders that granted the motions for summary judgment filed by defendants-appellees Attorney Keith K. Brooks and his former employer, the law firm of Schneider, Smelz, Ranney and LaFond, thus terminating appellants' action for legal malpractice.
Appellants argue in this appeal that they presented sufficient evidence to establish they were in privity with appellees. Appellants further assert the trial court improperly refused to grant both a motion to intervene and a motion to amend their complaint. This court has reviewed the record and determines the trial court appropriately granted appellees' motions for summary judgment; therefore, appellants' remaining assignments of error are moot and the orders of the trial court are affirmed.
Appellants are the children and grandchildren of Michael and Idell Grayson. In 1984, Michael Grayson won the Ohio Lottery. He was notified he would be entitled to twenty annual payments in the amount of over $190,000.00.
In July 1984, Michael engaged the services of appellees in order to obtain legal advice concerning disposition of the lottery proceeds upon his death. Michael consulted primarily with appellee Brooks. In response to Michael's request, Brooks prepared both a will and the documents necessary to establish a testamentary trust regarding any proceeds, including the lottery payments, of Michael's future estate.
Appellant Smith was present at "every meeting"[2] between her parents and Brooks. None of the other appellants was present. Smith's role was that of a "middleman"; she would repeat Brooks' words for her parents' benefit since her mother was "illiterate" and her father "hard of hearing."
Appellant Smith indicated the words "estate planning" were "never brought up" at these meetings. The discussions, however, focused on "whatever would be beneficial to the beneficiaries" of Michael's estate but "mostly [her] mother." Thus, the resulting provisions of the documents prepared by Brooks indicated that upon Michael's death, the assets of his estate and of the trust would pass to Idell. Any assets remaining upon Idell's death would be distributed in portions to appellants.
Michael decided on some of these provisions despite Brooks' advice to modify some of the terms. In a letter dated August 3, 1984, Brooks explained to Michael the adverse tax consequences of his decisions as follows:
Dear Mr. Grayson:
 When you signed your Will and Codicil, we discussed future revisions which would take advantage of United States estate tax exemptions. I also mentioned this in my letter to you dated July 10, 1984.
 Under your Will all property goes to your wife when you die. Even though you will receive your Lottery winnings over 20 years, the right to these payments results in estate taxes upon your death. If you were to die this year, * * *
 [u]pon your wife's death after you, * * * [t]he combined estate taxes for both estates would be about $626,200.00.
 Because of these many taxes, we strongly recommend you to change your Will to make use of all of the advantages given you by law. Each individual is given a "unified credit" which protects a portion of his property from either estate or gift taxes. * * *
 A United Credit By-Pass Trust gives you a break from the tax law. The portion of your estate equal to the unified credit amount ($325,000.00 if you die in 1984) is placed in trust. All trust income is paid to your wife during her life. You may also give your wife the ability to receive each year the greater of $5,000.00 or 5% of the amount in the Trust. The Trustee may, in his sole discretion, also give to your wife all or part of the amount in trust. Upon her death, the property can pass, tax free, to whomever you designate in your Will (for example, your children, grandchildren or other beneficiaries).
 The balance of your estate goes to your wife as in your present Will.
 The Trust is not included in your wife's estate and therefore not subject to estate tax. This enables the property to "By-Pass" her and pass to children, grandchildren or other beneficiaries tax free. Under this plan, the combined estate taxes for both estates would be about $477,460.00, a total savings of about $148,470.00 when compared to your present Will. As each year passes, and as the unified credit increases, your savings under our recommended plan will also increase.
 * * *, I will call you * * * to arrange a time to get together with you and your wife to discuss these suggestions and any questions you may have.
Nevertheless, Michael rejected Brooks' advice since he wanted Idell to have full "control over [his] assets"; he wanted her to "have complete access to the moneys" from his estate during her lifetime.
Michael executed the final versions of these documents in 1985. The will provided for payment to Idell from the testamentary trust by three methods, viz., (1) the trust would pay "the entire net income of the trust"; (2) the trustee could invade the trust principal as "necessary to provide for [Idell's] health, maintenance, support and welfare"; and (3) Idell could demand at any time "any" amount of the trust principal. Michael died in 1987.
Appellees continued to serve as attorneys for the estate and for Idell until her death in 1991. Thereafter, pursuant to the terms of Idell's will, appellees administered her estate.
On October 27, 1995, appellant Smith composed and sent a letter addressed to appellee law firm, stating as follows:
 As you may be aware I am a 30% beneficiary of the Michael Grayson Trust. I also represent by power of attorney my sisters (sic) 20% interest in that trust and as trustee, my daughter's 20% interest in that trust.
 We were informed in June 1995 that the Internal Revenue Service has assessed a $94,944 penalty plus interest against the estate [of Idell Grayson] and our interest in the trust. This penalty was incurred because of the negligence of your law firm.
 I demand that your firm pay this penalty, interest, and related costs of your errors immediately.
(Emphasis added.)
On November 7, 1997 appellants filed this action in the Cuyahoga County Court of Common Pleas. In their complaint,[3] appellants made the following pertinent allegations:
 21. Defendants were retained to provide legal services on behalf of Michael Grayson, Idell Grayson, and their respective estates, which services were to include estate planning, administration of estates and trusts, and preparation and filing of any and all necessary tax returns. Defendants represented to Michael Grayson, Idell Grayson and the Plaintiffs that they were knowledgeable and competent in all areas of law relating to these matters.
 22. Defendants failed to provide proper advice, counsel and services relating to the estate planning for Michael Grayson and Idell Grayson, including preparation of relevant documents.
* * *
 32. Defendants owed a professional duty to Michael Grayson, Idell Grayson, their estates, the Michael Grayson Trust and/or to the Plaintiffs to provide competent legal representation and services in all matters pertaining to estate planning on behalf of Michael Grayson and Idell Grayson, estate administration, trust administration, including, but not limited to, the proper preparation of estate planning documents and the preparation and filing of all necessary tax returns in a proper and competent manner.
Appellants further alleged appellee law firm had been negligent in its hiring and supervision of appellee Brooks.
Appellees filed answers in which they denied the pertinent allegations of the complaint and set forth several affirmative defenses, including lack of standing and the expiration of the statute of limitations.
On April 14, 1998 the trial court issued a case management schedule, setting dates for the conclusion of discovery and the filing of dispositive motions. A trial date of June 7, 1999 was set.
On February 17, 1999 the trial court granted an extension of time to March 31, 1999 for the filing of dispositive motions but reminded the parties the previously-scheduled trial date remained.
On March 29, 1999 appellants filed a motion for leave to file a second amended complaint. Appellants asserted they wished to add as a party-plaintiff appellant Smith in her capacity as "Executrix of the Estate of Michael Grayson" but that this addition did not "add any new facts or claims to this action." Contemporaneously, appellant Smith also filed a motion to intervene in the action as an additional party-plaintiff in her capacity as Executrix of her father's estate.
The following day, in compliance with the trial court's order for dispositive motions, appellees filed separate motions for summary judgment. In their briefs in support of their motions, appellees first argued appellants lacked standing to pursue the action since they were neither clients nor in privity with a client. Appellees further argued appellants' claims regarding tax return filings for the estate of Idell Grayson were barred by R.C.2305.11(A), the applicable statute of limitations. Appellees also argued appellants could not establish any damages with regard to one of their claims. Finally, appellee Brooks argued appellants could not prove he breached any duty he owed to Michael or Idell Grayson.
Appellees filed deposition transcripts in order to support their motions. Moreover, appellees attached to their motions as exhibits copies of the following: (1) Michael Grayson's last will and testament; (2) pertinent portions of Brooks' deposition testimony; (3) pertinent portions of appellants' expert witness's deposition testimony; and (4) Brooks' letter of August 3, 1984 to Michael Grayson.
In addition, appellees filed briefs in opposition to both appellants' motion to amend their complaint and appellant Smith's motion to intervene in the case in her capacity as Executrix of Michael's estate. Appellees argued appellants' motions were untimely and were inadequately justified.
Although appellants filed a reply brief, on April 12, 1999 the trial court denied their motions to amend their complaint and to intervene.
Subsequently, on May 3, 1999 appellants filed their brief in opposition to appellees' separate motions for summary judgment. Appellants argued therein that they were "in privity" with appellees' clients by virtue of an involvement in the "estate planning." They further argued they were the "intended beneficiaries" of Michael's estate; therefore, they "should be able to bring an action" against appellees "since [appellants] did not receive as much as Michael Grayson desired them to receive * * *." Appellants supported their arguments by attaching the affidavits of appellant Smith and appellant Payne and a copy of a portion of appellees' expert witness's deposition testimony.
On May 14, 1999 the trial court issued separate journal entries granting each appellee's motion for summary judgment. The trial court stated as the basis for its orders the appellants lacked standing to pursue their claims.
Appellants filed their appeal from the foregoing entries of final judgment. They present three assignments of error for review.
Appellants' first assignment of error states:
 THE TRIAL COURT ERRED IN GRANTING MOTION FOR SUMMARY JUDGMENT AS PLAINTIFF'S (SIC) CLAIMS AGAINST DEFENDANTS WERE WARRANTED UNDER EXISTING LAW.
Appellants argue summary judgment for appellees on their claims for legal malpractice was improper. They contend their affidavits were sufficient to raise an issue of fact regarding whether they were "in privity" with appellees.[4] Appellants' argument is unpersuasive.
In reviewing a motion for summary judgment, this court conducts a de novo review of the trial court's decision. A court reviewing the granting of a summary judgment must follow the standards set forth in Civ.R. 56(C) * * *. Aglinsky v. ClevelandBldrs. Supply Co. (1990), 68 Ohio App.3d 810.
When a court considers a motion for summary judgment, the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to any material element of the nonmoving party's claim. Dresher v.Burt (1996), 75 Ohio St.3d 280. If the moving party does so, the nonmoving party has a reciprocal burden to produce evidence on any issue for which that party bears the burden of production at trial.Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108. When the defendants, as the moving parties, furnish evidence that demonstrates the plaintiffs have not established the elements necessary to maintain their action for legal malpractice, summary judgment is properly granted in favor of defendants. Kovacs v.Thompson, Hewitt O'Brien (1997), 117 Ohio App.3d 465 (discretionary appeal not allowed [1997], 78 Ohio St.3d 1512); cf., Vahila v. Hall
(1997), 77 Ohio St.3d 421.
In order to have established a cause of action for legal malpractice in Ohio, appellants were required to present evidence to demonstrate the following: (1) an attorney-client relationship existed between appellants and the appellees that imposed a professional duty upon appellees toward appellants; (2) appellees breached that professional duty toward appellants; and (3) appellants suffered damages proximately caused by the breach. Id., quoting Sevin v. Thompson, Hine Flory (May 29, 1996), Summit App. Nos. 17349, 17483, unreported. See, also, Krahn v. Kinney (1989),43 Ohio St.3d 103 at 105.
It is clear from a perusal of the evidentiary materials presented to the trial court that appellants could not establish the first element of their cause of action. Appellees' clients were the Graysons, not their children and grandchildren.
Appellants urge this court to overlook well-settled law in the Ohio area and, instead, to apply legal standards developed in other jurisdictions. This court, however, is bound by both the decisions of the Ohio Supreme Court and its own decisions. Ohio law recently was summarized by this court as follows:
 * * * As a general rule, an attorney is liable to his client alone, not to third parties, for negligence in the conduct of his professional duties. Stoll v. Kennedy (1987), 38 Ohio App.3d 102, 526 N.E.2d 821. [Appellants] cite several cases which hold that an attorney may be liable to a third party for negligence in connection with his representation of a client. See, e.g., Solon Family Physicians, Inc. v. Buckles (1994), 96 Ohio App.3d 460, 645 N.E.2d 150. However, Ohio courts have held that such liability only arises in cases where the third person is in privity with the client or the attorney acts maliciously. Taylor v. Microdot (1992), 79 Ohio App.3d 485, 491, 607 N.E.2d 855, 858-859 (citing Scholler v. Scholler [1984], 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, syllabus). See, also, Simon v. Zipperstein (1987), 32 Ohio St.3d 74, 512 N.E.2d 636; Columbus Consol. Agency, Inc. v. Wolfson (1990), 70 Ohio App.3d 467, 591 N.E.2d 385; DiPaolo v. DeVictor (1988), 51 Ohio App.3d 166, 555 N.E.2d 969.
Am. Express Travel Related Serv. Co., Inc. v. Mandilakis (1996),111 Ohio App.3d 160 at 165.
Thus, although this court recognized in Am. Express other jurisdictions had created exceptions to the rule, it declined to apply them. In view of the supreme court's directive in Simon v.Zipperstein (1987), 32 Ohio St.3d 74, that approach was appropriate. The supreme court stated the following in Simon at 76-77:
 It is by now well-established in Ohio that an attorney may not be held liable by third parties as a result of having performed services on behalf of a client, in good faith, unless the third party is in privity with the client for whom the legal services were performed, or unless the attorney acts with malice. Scholler v. Scholler (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, paragraph one of the syllabus; [additional citations omitted.]
 The rationale for this posture is clear: the obligation of an attorney is to direct his attention to the needs of the client, not to the needs of a third party not in privity with the client. As was stated by the court in W.D.G., Inc., supra:
 * * * Some immunity from being sued by third persons must be afforded an attorney so that he may properly represent his client. To allow indiscriminate third-party actions against attorneys of necessity would create a conflict of interest at all times, so that the attorney might well be reluctant to offer proper representation to his client in fear of some third-party action against the attorney himself. Id. at 399-400.
* * *
 In the instant case, [there were] no special circumstances such as fraud, bad faith, collusion or other malicious conduct which would justify departure from the general rule. In addition, privity was lacking since appellee, as a potential beneficiary of his father's estate, had no vested interest in the estate. Cf., Cunningham v. Edward (1936), 52 Ohio App. 61, 6 O.O. 98, 3 N.E.2d 58. Although the court of appeals acknowledged the applicability of Scholler, supra, it elected to disregard the holding based upon public policy grounds. We disapprove of the approach taken by the court of appeals and its refusal to adhere to precedent. We reiterate our holding in the first paragraph of the syllabus of Scholler that [a]n attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously.
 For the foregoing reasons, the judgment of the court of appeals is hereby reversed, and the judgment of the trial court is reinstated.
(Emphasis added.)
In this case, neither appellants' interest in the Graysons' estate nor the Graysons' daughter's mere presence during any discussions the Graysons had with appellees could serve to create an attorney-client relationship between appellants and appellees. In short, there is nothing in the record to prove an attorney-client relationship existed between appellants and appellees with regard to the Graysons' estate planning.
Moreover, as the court observed in Lewis v. Star Bank, N.A.
(1993), 90 Ohio App.3d 709 at 712, in the analysis of claims of privity and vesting, the status of those seeking to bring a cause of action for legal malpractice must be examined at the time theclaimed mistakes occurred. As in Lewis, any interest appellants had in Michael's estate was subject to complete divestment as long as Idell lived since, in accordance with Michael's wishes, she had complete ownership and control over the monies remaining in Michael's estate. So long as Idell had sole discretion over the disbursements of the assets, appellants had no entitlement to anything; thus, since their interest had not vested, they had no privity. Cf., Elam v. Hyatt Legal Serv. (1989), 44 Ohio St.3d 175.
This conclusion is supported by the deposition testimony of appellant Smith, who admitted the following:
 Q. The money went into a trust for your mother's benefit, correct?
A. Correct.
 Q. You were not given any money when your father died?
A. No, I was not.
 Q. Whatever money you got was going to be after your mother passed away; is that right?
A. Yes.
* * *
 Q. * * * [S]he could have spent it all and then when she died there would have been nothing funding the trust or the beneficiaries, correct?
A. Yes.
* * *
 Q. When your mother died, do you know, did she have any assets other than the lottery payments?
A. She had the house.
 Q. What happened to the house? Did that get sold?
 A. She had the house and the car and she was deemed insolvent so they had to sell everything.
 Q. Because she had debt more than her assets?
A. Yes.
* * *
 Q. Do you have any reason to dispute that your mother was in debt like that when she passed away? You don't know what happened to the money?
A. No.
It is clear from a review of the materials presented in the trial court, therefore, that appellants could not support their cause of action against appellees for legal malpractice. Hence, the trial court did not err in granting appellees' motions for summary judgment. Am. Express Travel Related Serv. Co., Inc. v.Mandilakis, supra; Kovacs v. Thompson, Hewitt O'Brien, supra.
Accordingly, appellants' first assignment of error is overruled.
Appellants' second and third assignments of error, which are not separately argued, are set forth as follows:
 II. THE TRIAL COURT ERRED IN NOT GRANTING PLAINTIFF'S MOTION TO INTERVENE AS DEFENDANTS WOULD NOT HAVE BEEN PREJUDICED, NOR WOULD DISPOSITION OF THE MATTER HAVE BEEN DELAYED.
 III. THE TRIAL COURT ERRED IN NOT GRANTING PLAINTIFF'S (SIC) SECOND AMENDED COMPLAINT AS DEFENDANTS WOULD NOT HAVE BEEN PREJUDICED, NOR WOULD DISPOSITION OF THE MATTER HAVE BEEN DELAYED.
In view of this court's determination that the trial court was correct in concluding appellants had no standing to pursue their action against appellees, these assignments of error are moot.[5]
App.R. 12(A)(1)(c).
The orders of the trial court are affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. and JAMES M. PORTER, J. CONCUR
 _________________________________ PRESIDING JUDGE, KENNETH A. ROCCO
[1] The other named plaintiffs are Smith's sister Margaret Payne, Smith's daughter Melinda Klowsowski, and Payne's children Michael G. Oran and Luther Payne.
[2] Quotes are taken from evidentiary material filed in the trial court.
[3] Appellants later amended their complaint only to correct a typographical error in their paragraph 17.
[4] Appellants present no argument with respect to appellees' assertion raised in the trial court that the legal malpractice claim relating to the Estate of Idell Grayson was barred by the statute of limitations. Hence, appellants have waived that issue. App.R. 12(A)(1)(b).
[5] Even if these assignments of error were not rendered moot by this court's disposition of appellants' first assignment of error, appellants' failure to comply with the directive of App.R. 16(A)(7) would warrant this court's decision to decline to address them. App.R. 12(A)(2); see, also, State v. Watson (1998), 126 Ohio App.3d 316;White v. Moody (1988), 51 Ohio App.3d 16 at 23.